17587

E. D. SLOAN, individually and as a taxpayer, citizen, resident and user of the streets of the City of Greenville, South Carolina, for himself and for all other taxpayers, citizens, residents and users of the streets of the said City of Greenville, Appellant, v. CITY OF GREENVILLE, a municipal corporation, J. Kenneth Cass, the Mayor of the City of Greenville, Robert W. Hunter, Sam F. Floyd, W. M. Sanders, Dr. W. H. Powe, Dr. Thomas Parker and Gus Smith, the City Council of the City of Greenville, South Carolina, J. A. Brown, the acting Building Commissioner for the City of Greenville, and R. H. Cureton, the City Engineer for the City of Greenville, Respondents

(111 S. E. (2d) 573)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Messrs. W. H. Arnold* and *Price & Poag,* of Greenville, *for Respondent,*

December 1, 1959.

Moss, Justice.

This is a proceeding for injunctive relief instituted by the appellant, E. D. Sloan, as a taxpayer, citizen, resident and user of the streets of the City of Greenville, South Carolina, on behalf of himself and all others in like situation, against the City of Greenville, its City Council, the Building Commissioner, and the City Engineer, the respondents herein. The appellant sought to enjoin the City and its officials from issuing a building permit to W. H. B. Simpson and John A. Ellison, which would permit the construction of a five-story ten-level parking building at the intersection of West McBee Avenue and South Laurens Street, so that a portion of

the building would overhand West McBee Avenue and South Laurens Street. The overhand on West McBee Avenue would commence thirteen feet above the street level and extend out over said street approximately six feet. The overhang on South Laurens Street would commence twelve feet above street level and extend out over the said street for eight feet.

The application for a building permit to erect the proposed parking building overhanging the two public streets as aforesaid, was referred to the Public Safety Committee by the City Council. This committee held a public hearing and subsequently unanimously approved the issuance of the permit. The matter was thereafter brought up before the City Council, at a public meeting, and the said council unanimously approved and ratified the action of the Public Safety Committee and directed the issuance of the building permit. The permit authorized the construction of this parking building with the overhang into West McBee Avenue and South Laurens Street to the extent heretofore stated.

Upon granting of the building permit by the City Council, the appellant instituted this action for a permanent injunction enjoining the city officials from issuing, or allowing to be issued, a permit for the erection of the multi-storied parking building encroaching upon or overhanging in any way the public streets heretofore referred to. The respondents filed an answer asserting that the City had, in its discretion, the authority to grant the permit.

This case was tried before the Honorable G. Badger Baker, Presiding Judge of the Thirteenth Circuit. Thereafter, the trial Judge issued an order denying the appellant the relief sought, and holding that the proposed projection of the building over the streets did not constitute a purpresture and a public nuisance, or an unlawful obstruction and encroachment to and upon the streets, since the overhang was limited to space above and beyond the horizonal and perpendicular zone required for vehicular and pedestrian traffic.

The parties to this action agreed that "West McBee Avenue and South Laurens Street are public streets in the City of Greenville and were dedicated to the public for street purposes by plat of Lemuel Alston when the City of Greenville was initially laid out. The City does not own the fee to said streets." It appears by reference to the case of *Grady v. City of Greenville*, 129 S. C. 89, 123 S. E. 494, 495, and the case of *Chapman v. Greenville Chamber of Commerce*, 127 S. C. 173, 120 S. E. 584, that the streets shown on the Lemuel Alston map were dedicated as streets by the said Alston, the owner of the fee to said streets, in the latter part of the eighteenth century, and what is now the City of Greenville was then known as "The Village of Pleasantburg."

The question for determination upon this appeal is whether the City of Greenville, which holds title to the streets in question, in trust, for the public for street purposes only, has authority to permit the area above such streets to be used for private purposes.

In the case of *Grady v. City of Greenville, supra* [129 S. C. 89, 123 S. E. 496], this Court said:

"Dedication is the giving of land or an easement for the use of the public by the owner. 9 A. & E. Enc. (2d Ed.) 21. That 'a dedication, whenever completed, is irrevocable' is well settled. 9 A. & E. Ency. (2d Ed.) 77, Hence:

"If a dedication is made for a specific or defined purpose, neither the Legislature, a municipality, or its successor, nor the general public has any power to use the property for any other purpose than the one designated, whether such use be public or private, and whether the dedication is a common-law or statutory dedication, and this rule is not affected by the fact that the changed use may be advantageous to the public.' 18 C. J., 127; *McCormac v. Evans*, 107 S. C. 39, 42, 92 S. E. 19."

And again from the *Grady* case we quote the following:

"The city council was then, and is now, vested with full and exclusive power to control and direct the use of the land

for street purposes. Charter, 19 Stat. 106; Section 4570, Code 1922. The exercise of that power is purely a legislative function. State ex. rel. *Townsend v. Board of Park Com'rs,* 100 Minn. 150, 110 N. W. 1121, 9 L. R. A., N. S., 1045. That a municipality, acting through its legislative body, has no power to alien the streets of a town, or by contract, ordinance or by-law, to cede away, limit, or control its legislative or governmental authority over streets, or otherwise to disable itself from performing its public duties, is elementary. *Wabash R. Co. v. City of Defiance,* 167 U. S. 88, 97, 17 S. Ct. 748, 42 L. Ed. 87. *Spencer v. Mahon,* 75 S. C. 232, 55 S. E. 321. *Croker v. Collins,* 37 S. C. 327, 15 S. E. 951, 34 Am. St. Rep. 752."

The dedication by Lemuel Alston of the land within the bounds of West McBee Avenue and South Laurens Street was for a specific, limited and defined purpose. The lands were dedicated to the public for street use only and the City of Greenville has no power by contract, ordinance, or permit, to devote the street to a purpose inconsistent with the primary and essential object to which the street was dedicated. As was said in the case of *McCormac v. Evans,* 107 S. C. 39, 92 S. E. 19, 20, "* * * Nothing can be clearer than that if a grant is made for a specific, limited and defined purpose, the subject of the grant cannot be used for another."

This Court has said in numerous cases that all property held by a municipal corporation is held in a fiduciary capacity. *Haesloop v. City Council of Charleston,* 123 S. C. 272, 115 S. E. 596; *Green v. City of Rock Hill,* 149 S. C. 234, 147 S. E. 346, and *Carter v. City of Greenville,* 175 S. C. 130, 178 S. E. 508.

In the case of *Green v. City of Rock Hill, supra,* [149 S. C. 234, 147 S. E. 356], this Court said:

"The discretionary power of use and disposal does not include the authority to donate (or devote) municipal property to a strictly private use, for the obvious reason that a

transfer or release of such property by a municipality to a private ownership (or use) without receiving in return some consideration of reasonably equivalent value would amount to a palpable breach of the trust upon which it is held.' *Haesloop v. City Council, supra;* 43 C.J., 1341."

In 25 Am. Jur., Highways, section 276, at page 571, it is said:

"* * * Where the municipality does not own the title to its streets, it cannot use them or authorize their use for anything other than street purposes. * * *"

In the case of *Bethel Methodist Episcopal Church v. City of Greenville,* 211 S. C. 442, 45 S. E. 2d 841, this Court held that since a municipal corporation holds and controls its streets, in trust, for the use and benefit of the general public, it is without authority to convert such streets to any other use.

Since the City of Greenville, or its predecessor, accepted the land dedicated by Lemuel Alston for street purposes, the said city is without authority to change the use or to apply the property to some other use inconsistent with the dedication. The city does not have the discretionary power to devote this dedicated property to the private use of the parties constructing a private parking building. The public has the right to the unobstructed use of the streets as they were acquired by the City of Greenville.

The lower Court, in denying the appellant injunctive relief, held that the proposed projection of the parking building over the streets to the extent hereinabove stated, did not constitute a purpresture and a public nuisance or an unlawful obstruction and encroachment to and upon the streets, because there would be no interference to the right of vehicular and pedestrian traffic movement. It was also held that the erection of the building would not be incompatible or inconsistent with the dedication of the streets because there would be no obstruction or encroachment in the traffic movement area. The appellant alleges that the proposed encroachment of the parking building is a purpresture.

A purpresture is well defined in the case of *Southeastern Pipe Line Co. v. Garrett,* 192 Ga. 817, 16 S. E. 2d 753, 760, where it is said:

"A 'purpresture' as defined at common law, and recognized in this and other States, is 'when one encroacheth and makes that serviceable to himself which belongs to many,' as ' "when there is a house builded or an inclosure made of any part of the King's demesne, or of a highway, or a common street, or public water, or such like things," ' or by ' "digging a ditch or making a hedge across (a highway), or laying logs of timber in it, or by doing any other act which will render it less commodious to the King's subjects." ' * * *"

In the case of *George W. Armbruster, Jr., Inc. v. City of Wildwood,* D. C., 41 F. 2d 823, 828, it was said:

"A form of public nuisance of which cognizance has been taken by the courts of equity in England and in this country is called 'purpresture,' which is defined to be 'an encroachment upon lands, or rights and easements incident thereto, belonging to the public, and to which the public have a right of access or of enjoyment, and encroachment upon navigable streams.' * * *"

It has been held that an obstruction placed anywhere within the street limits, even though not on the part of the street ordinarily used for travel, or placed in the air over a street, may constitute a nuisance. The public right goes to the full width of the street and extends indefinitely upward and downward as far at least as to prohibit encroachment on such limits by any person, by any means, by which the enjoyment of such public right is, or may be, in any manner hindered or obstructed or made inconvenient or dangerous. *Wheeler v. City of Ft. Dodge,* 131 Iowa 566, 108 N. W. 1057, 9 L. R. A., N. S., 146; 64 C.J.S., Municipal Corporations, § 1746, page 174. It was also held in the case of *People ex. rel. Jeffrey v. Murphy,* 254 Ill. App. 109, that the beneficial use of a street vested in the public includes

unobstructed use of the air above and the ground beneath the surface.

In the case of *Davis v. Spragg*, 72 W. Va. 672, 79 S. E. 652, 653, 48 L. R. A., N. S., 173, it appears that the defendant erected a porch or a wooden awning in front of his building fifteen feet above the street, extending to the outer edge of the sidewalk, a distance of about nine feet, and supported by two iron posts about four inches in diameter, resting on the sidewalk near the curb line. An action was instituted to enjoin the maintenance of such porch as a nuisance. The Supreme Court of Appeals of West Virginia, in disposing of the appeal, said:

"* * * Any unlawful encroachment upon or over a public highway, whether actually interfering with travel by the public or not, is a purpresture and a nuisance *per se,* and the jury are not at liberty to determine whether such encroachment amounts to a public nuisance by the measure of inconvenience the public may suffer from it. 2 Elliott on Roads and Streets, § 828. The rule is abundantly supported by adjudicated cases. For instance, an awning over the sidewalk *(Hibbard, Spencer, Bartlett & Co., v. City of Chicago,* 173 Ill. 91, 50 N. E. 256, 40 L. R. A. 621), a bay window extending 18 inches into the street *(People ex. rel. v. Harris,* 203 Ill. 272, 67 N. E. 785, 96 Am. St. Rep. 304), a bay window 16 feet above the sidewalk extending 3 feet and 4 inches over the street line (Reimer's Appeal, 100 Pa. 182, 183, 45 Am. Rep. 373), pillars in front of a building, extending 22 inches onto the sidewalk *(First Nat. Bank of Montgomery v. Tyson,* 133 Ala. 459, 32 So. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46, and *Bischof v. Merchants Nat. Bank,* 75 Neb. 838, 106 N. W. 996, 5 L. R. A., N. S., 486) have all been held to be public nuisances. * * *"

In the case of *Reimer's* Appeal above cited, it appears that the defendant constructed a second story bay window which projected over the sidewalk some 3 feet and 6 inches at the second floor level. The city of Philadelphia passed an ordinance which gave permission to the defendant to construct

the window in question. It was held that in projecting the bay window over the sidewalk that such created a purpresture.

The Court said:

" '* * * Projecting windows from an upper story interfere to some extent with the ordinary and proper enjoyment of rights which are free to all, and one who appropriates the space above the footway creates a purpresture by making several to himself that which ought to be common to many. It cannot be successfully maintained that owners of property fronting on a highway have any such right as this, and when there is a purpresture set up, and such purpresture constitutes a nuisance as well, by a wrongful appropriation of a portion of a highway, courts of equity may forbid the continuance of such nuisance and abate the same by injunction.' "

In 25 Am. Jur., Highways, Section 272, at page 565, it is said:

"* * * So far as the right of the public to travel unmolested over the highway is concerned, the dominion of the people is absolute, and is not confined to obstructions on the surface of the street, but extends with equal emphasis to encroachments upon the public right either below or above the surface. As a rule, however, the decisions are much more strict against encroachments on the surface of the way than against those above or below the surface, upon the theory that the former are much more liable to interfere with the permanent use of the public for travel."

And again in 25 Am. Jur., Highways, Section 273, at page 566, it is said:

"The rule adhered to in most jurisdictions is that any obstruction of or encroachment upon a highway, made without right or proper authorization, constitutes a public nuisance, as well as a purpresture, even though it does not actually operate as an obstruction to travel or work a positive inconvenience to anyone. Some courts, however, observe a

distinction in this respect between a nuisance and a purpresture, holding that in the absence of any element of inconvenience or annoyance to the public, such an obstruction or encroachment is to be regarded as a purpresture only, and not as a nuisance. * * *"

The respondents assert that the appellant has no standing in Court to bring this action in the absence of an allegation that he has sustained, or will sustain, special and peculiar damage or injury different in kind and degree from that of the general public. An examination of the complaint shows upon its face the capacity in which the appellant brought the action. The respondents did not demur to the complaint. What we said in the case of *Bramlett v. Young,* 229 S. C. 519, 93 S. E. (2d) 873, 881, will dispose of this issue. In the cited case, we said:

"The appellants assert that the respondents herein had no legal capacity to bring this action. An examination of the petition shows upon its face the capacity in which the respondents brought the action. Hence, since the capacity in which the respondents instituted this action appears upon the face of the complaint, if the appellants desired to take. advantage of or question the right to bring the action, the appellant's remedy was to demur to the complaint, as is provided for in Section 10-642 of the 1952 Code of Laws.. This they did not do, and since the objection was not made by demurrer, it is considered waived. *Neel v. Clark,* 193 S. C. 412, 8 S. E. (2d) 740. * * *"

The respondents call our attention to Sections 33-801, 33-811, 47-61, 47-1323 and 47-1327 of the 1952. Code of Laws, which have reference to roads and streets, and giving to public authorities the right to lay out, open, close up, widen or alter streets and highways. These sections have no application to the factual situation revealed. by the record in this case. All of these sections have to do with the use of streets and roadways for the material interest of the general public. None of these sections authorizes a city coun-

cil to grant permission to private individuals to encroach upon streets or highways which have been heretofore dedicated to the exclusive use of the public.

The respondents assert that in the City of Greenville there are now numerous encroachments over the sidewalks consisting of advertising signs and marquees. The fact that there are now encroachments over the sidewalks of the City of Greenville cannot justify the granting of a permit to do an illegal act.

In the Massachusetts case of *Codman v. Evans*, 5 Allen 308, 81 Am. Dec. 748, the Court said:

"The evidence of the alleged custom was rightly rejected. If there be a custom in Boston to erect bay-windows, balconies and other structures over the streets, provided they do not interfere with the rights of the public, by proprietors who own the soil of the street, such a custom has no application to the case. If it be a custom to erect them over the land of other people, such a custom is illegal; and the defendant cannot justify himself in occupying his neighbor's property as a part of his dwellinghouse on the ground that such trespasses are customary in Boston."

The right to maintain an obstruction which unreasonably interferes with the enjoyment of a public right cannot be based upon custom and usage, nor can the maintenance of such an obstruction be justified by the existence of similar obstructions in the same locality. 25 Am. Jur., Highways, Section 275, at page 569.

The respondents cite the cases of *Grady v. City of Greenville, supra,* and *Chapman v. Greenville Chamber of Commerce, supra,* and rely upon the authority of these cases for affirmance of the Order of the lower Court.

In the *Grady case,* this Court affirmed the right of the City Council of Greenville to remove a monument from the center of Main Street in the City of Greenville, saying:

"* * * Certainly, the ordering of the removal of an obstruction in a street was an act clearly within the scope of

the council's powers, and the fact that the monument was not a substantial obstruction, or that the council's action was ill-advised and inexpedient, would afford no ground for injunction. * * *" [129 S. C. 89, 123 S. E. 499.]

In the *Chapman case,* an Act of the Legislature, 33 Stats. at Large, p. 688, conferred on the Chamber of Commerce for one hundred years the exclusive control of the old court house built in the middle of Court Street, and requiring the Chamber of Commerce to tear it down and erect a multi-storied building, in which the County was to have the use of certain offices and one-half of the rent of any surplus space. This Act was attacked as violative of several constitutional provisions. It was also asserted that the land had been dedicated by Lemuel Alston for street purposes. The Court held that the land, having been dedicated for street purposes, is under the control of the Legislature as the representative of the public, and its control is not subject to attack except upon constitutional grounds. The Court held that the Act in question was valid and constitutional in all respects. There is no Act of the Legislature granting to the City Council of Greenville the authority to permit the encroachments here involved. The *Chapman case* is, therefore, not authority for what the Greenville City Council is here attempting to do.

It is our conclusion that the City Council of the City of Greenville is without legal authority to grant to private individuals a building permit to construct a private garage building which will permanently overhang or encroach upon and over the streets here involved, because such would constitute an unlawful encroachment upon a street which was dedicated to the public for street purposes only. The lower Court was in error in refusing to grant the injunction demanded by the appellant.

The order of the lower Court is reversed and this case remanded to that Court for the issuance of a permanent injunction restraining and enjoining the respondents from issuing or allowing to be issued to W. H. B. Simpson and

John A. Ellison a permit for the erection of a multi-storied parking building encroaching upon or overhanging in any way the public streets of the City of Greenville.

Reversed and remanded.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.