18024

Jean W. DALTON, Respondent, v. TOWN COUNCIL OF MT. PLEASANT, Francis F. Coleman, Mayor of the Town of Mt. Pleasant, O. Frank Thornton, Secretary of State, and Stoney O. Hartin, Henry Tecklenburg, and J. Oswald Freeman, the County Commissioners of Elections, Defendants, Thomas O. Byrd *et al.*, Intervenors-Defendants, and J. C. Long and The Beach Company, Intervenors-Amici Curiae, of whom Town Council of Mt. Pleasant, G. McGrath Darby, Jr., as successor in office to Francis F. Coleman as Mayor of the Town of Mt. Pleasant, J. C. Long and The Beach Co, are, Appellants.

(129 S. E. (2d) 523)

*Messrs. Thomas P. Stoney, Huger Sinkler, J. C. Long* and *W. Turner Logan,* all of Charleston, *for Appellant,*

548

. . *Messrs. Edward D. Buckley* and *J. Kenneth Rentiers,* of Charleston, *for Respondent,*

*Messrs. Thomas P. Stoney, Huger Sinkler, J. C. Long* ·and *W. Turner Logan,* all of Charleston, *for Appellants, in*

February 7, 1963.

BRAILSFORD, Justice.

This action, commenced May 15, 1955, attacked the validity of the annexation, following an election held March 15, 1955, of certain territory to the municipality of Mt. Pleasant. The complaint charged that the petition for the election was not signed by a majority of the freeholders of the area to be annexed, as required by Section 47-14, Code of Laws, 1952, and that a majority of the qualified persons voting cast their ballots against annexation. Since the issue here will turn on the first ground, we will not again refer to the second. The Master for Charleston County filed his report on February 2, 1960. (The last reference had been held June 29, 1956.) He found that the annexation should be declared invalid because the petition for the election was signed by only 214 of the 456 freeholders of the area affected. The defendants excepted to the report, claiming that 23 additional freeholders should have been counted as having signed the petition. The plaintiff also excepted, claiming that the master erred in determining the total number of freeholders as of the date the 1954 auditor's books were closed, and in not taking into account those who became freeholders between that date and February 17, 1955, when the petition was certified by the Town Council as having been signed by a majority of the freeholders of the affected area. While the report was before the circuit judge on these exceptions, he allowed 18 of the 23 persons who had not been counted as signers of the petition to intervene in behalf of annexation, and he allowed others interested in the annexation to be heard as *amici curiae.* After hearing additional testimony and

arguments on the issues raised by the exceptions and on additional objections to the report raised by the *amici curiae,* the circuit judge filed a decree on August 22, 1961. (The record does not disclose when the arguments before the circuit judge were completed.) He disposed of the exceptions to the report by holding that Sections 47-12, 47-14, Code of Laws, 1952, require that an annexation petition be signed by a majority of those who are freeholders of the area affected on the date this fact is certified to the county commissioners of elections by city or town council (here February 17, 1955) and by holding that the petition was signed by less than a majority of those who were freeholders on that date, even if the 23 names contended for by defendants should be counted. Thus, the circuit judge affirmed the master's finding of fact that less than the required majority of freeholders signed the petition, although he reached this conclusion on different premises. He also affirmed the master's legal conclusion that such deficiency in the petition invalidated the election and the annexation. The defendants, joined by the *amici curiae,* appealed. By appropriate exceptions, they challenged the premises on which the master and circuit judge, respectively, concluded that less than a majority of freeholders signed the petition. However, the exceptions do not challenge the legal conclusion that under the facts of this case such deficiency of signatures on the annexation petition is fatal to the validity of the annexation. Hence, our inquiry on this phase of the case is limited to whether the record supports the finding below that the petition was not signed by a majority of the freeholders. We reach what we regard as the controlling issue quickly by assuming, as contended by appellants, that 228 freeholder signatures to the petition would have constituted a majority. The master found that there were only 214. The appellants contend that an additional 23 should have been included, a total of more than the required number. We now refer to the facts relating to these 23 electors.

On January 17, 1955, three separate petitions were filed with Town Council of Mt. Pleasant. Each described a dif-

ferent area and asked for an election on the question of its annexation to Mt. Pleasant. These petitions were signed, respectively, by 23, 75 and 39 persons, or a total of 137. Town Council determined that each petition was signed by a majority of the freeholders of the area described therein, and certified this fact to the County Commissioners of Elections. Under the terms of the applicable statutes (Section 47-12, *et seq.*, recently summarized by this Court in *Hollingsworth v. The City of Greenville, S. C.*, 128 S. E. (2d) 704, filed December 10, 1962.) this action would have resulted in three separate elections to determine the question of annexation of each area. However, within a few days Town Council became interested in annexing a larger area, which included the three areas described in the petitions of January 17 and was more than double their combined size. The petition in question here, which accurately described the area proposed to be annexed, was circulated and filed with Town Council on or before February 17, 1955. At a special meeting on that date, the actions previously taken with respect to the petitions of January 17 were rescinded, and Town Council certified that a majority of the freeholders of the area proposed to be annexed had petitioned for an election.

The master found that of the 137 signatures on the three petitions of January 17, 31 were not duplicated on the petition of February 17. Of these, he found that 8 were not freeholders. Appellants contend that the remaining 23 should be counted as signers of the petition which resulted in the election of March 15 and the annexation of the area described.

The statutory requirement is a petition signed "by a majority of the freeholders of the territory which it is proposed to annex, accompanied by an adequate description thereof, praying that an election be ordered to see if such territory shall be included in the city or town." Sec. 47-12, Code of Laws, 1952. These 23 electors did not sign a petition for an election on the annexation of the territory in question. That they did sign petitions for elections on the annexation of

different areas which were included within the territory annexed is beside the point. The petitions were separate and distinct and prayed for elections on different annexations.

We held in *Hollingsworth v. The City of Greenville, supra,* that a city council has no authority to delete a portion of the area described in an annexation petition before certifying it for an election. It is equally without power to increase such area. The annexation of an area described in one petition cannot rest, in whole or in part, on another petition for an election on the annexation of a smaller, included area.

The intervention of these persons in favor of the annexation and their testimony that they expected and wanted their respective signatures to be counted cannot alter the fact that they did not sign the petition for the election which was held. They could not, in effect, ratify the unwarranted action of Town Council in counting them as petitioners. The case for ratification was stronger in *Williams v. Jacobs,* 237 S. C. 183, 116 S. E. (2d) 157, from which we quote:

"Sec. 47-12, Code of Laws of South Carolina, 1952, requires as a prerequisite to such election that 'a petition shall first be submitted to the council by a majority of the freeholders of the territory proposed to annex, * * *'.

"The names on the petition when filed and acted upon by the annexing body could not be thereafter ratified; and it is evident that unless the questioned names are counted the petition is deficient in that it was not by a majority of the freeholders of the territory to be annexed."

This is not a mere irregularity as appellants contend. The petition for the election which was held March 15, 1955, was not signed by a majority of the freeholders, as is required.

What has been said disposes of appellants' question four and renders question three moot. Turning to question one, we quote the exception on which it is based:

"The Court erred in not holding that the plaintiff lacks capacity to maintain this action, the error being that the plaintiff, who is not a freeholder within the territory proposed to be annexed, is not a person interested to contest the annexation within the meaning and intent of Section 47-22, Code of Laws of South Carolina, 1952."

Lack of capacity to sue was not raised by answer or demurrer and has been waived. Sec. 10-647, Code of Laws, 1962. However, in their argument appellants contend that plaintiff's claimed lack of standing to maintain the action deprives the court of jurisdiction of the subject matter. Without conceding that this is so, we proceed to consider whether plaintiff is a "person interested to contest the election" within the meaning of Sec. 47-22, from which we quote:

"When the limits of a city or town shall be ordered extended no contest thereabout shall be allowed unless the person interested therein shall, within sixty days * * * file * * * a notice of his intention to contest such extension, nor unless, within ninety days * * * an action shall be begun * * *."

The exception bases plaintiff's claimed lack of standing as a person interested in the annexation on the fact that she is not a freeholder. It is conceded that she is a registered, qualified elector, residing within the annexation area. As such, she was qualified to vote in the election, while nonresident freeholders were not. The statute makes annexation depend upon the will, as expressed in their ballots, of a majority of the class to which plaintiff belongs, thereby clearly recognizing that members of this class are persons "interested therein."

It was conceded in oral argument that plaintiff, as a resident elector, is a person interested to contest the *election,* as distinguished from the sufficiency of the freeholder's petition. The distinction is untenable under the statute, which makes interest in the extension of the limits of a city or town the criterion. Under appellants' theory, the largest

freeholder in the annexation area would have no standing to contest a fraudulent election, unless he was also a resident of the area. Furthermore, the concession destroys the attack on the court's jurisdiction and, with it, appellants' claimed right to have the issue of plaintiff's capacity to bring the action reviewed here.

Finally, appellants urge that the attack on the sufficiency of the petition should have been made before the election was held and came too late afterward.

Plaintiff complied strictly with the time limitations set forth in Sec. 47-22, *supra,* which was all that she was required to do. Under this section, time does not begin to run until the result of the election has been published or declared. The statute is controlling (*Hite v. Town of West Columbia,* 220 S. C. 59, 66 S. E. (2d) 427) rather than *Sullivan v. City Council of Charleston,* 123 S. C. 91, 116 S. E. 104, on which appellants base their contention. We add that this question was not properly before the circuit court because it was not raised before the master and there was no exception to the master's report on this ground. *Greer Bank and Trust Co. v. Waldrop,* 155 S. C. 47, 151 S. E. 920; *White v. Livingston,* 231 S. C. 301, 98 S. E. (2d) 534.

We have reluctantly reached the conclusion that this annexation, which has had *de facto* existence during the long pendency of this litigation must be declared invalid, realizing that serious problems may arise. However, plaintiff acted promptly in contesting it. She sought and was denied injunctive relief during the pendency of the action. There is nothing in the record to indicate that she has been responsible for the unreasonable lapse of time. We have no choice to deny her the affirmance to which she is clearly entitled under the applicable statute and the decisions of this Court.

Affirmed.

TAYLOR, C. J., Moss and LEWIS, JJ., and LEGGE, Acting Associate Justice, concur.